### DYKSTRA et v STATE ex ALBERT

Ohio Appeals, 1st Dist, Hamilton Co

No 4069. Decided Feb 15, 1932

John D. Ellis, City Solicitor, Cincinnati, Edward F. Alexander, Cincinnati, and John J. O'Donnell, for plaintiffs in error.

Carl T. Markley, for defendant in error.

HAMILTON, J.

There are several specifications of error, which, combined, present the question: Was the trial court correct in granting the writ of mandamus, reinstating the relator to the

position to which he had formerly been appointed and held, under the facts and the law relating to classified service?

It is stipulated in the record that the relator was duly and regularly appointed after passing an examination, and that he occupied the position until December 31, 1927; that on January 1st, 1928 his services were discontinued; that on December 31, 1927, an ordinance was passed that changed the position that he then occupied and that his services were dispensed with from and after January 1, 1928; that subsequently the Civil Service Commission made an order reinstating him to that position, and, that subsequent thereto, it revoked that order.

The controlling facts are in substance as follows: .

In April, 1927, Council of the City of Cincinnati passed an ordinance creating the position of steward of the Workhouse of the City of Cincinnati. That relator, Frank J. Albert passed the examination for the position in 1927, and was appointed and began his duties as such steward October 21, 1927. In November, the City of Cincinnati passed an ordinance in which the position of steward was omitted and the position of chef was created.

On December 31, 1927, Council passed an emergency ordinance, which became effective January 1, 1928, being No. 686—1927, entitled:

"An Ordinance to standardize the salaries of positions in the City Service by repealing Sections 222 to 251-2, inclusive, of the Code of Ordinances as adopted by Ordinance 660—1927, passed November 30, 1927, and ordaining in place of said repealed sections, etc., * * *."

The ordinance repealed all the former ordinances referred to.

The ordinance further provided:

"Each department shall, with the approval of the City Manager or other executive head, appoint such officers and employees as shall be necessary for the conduct of the work of the department, provided that the total set up of salaries of such department shall not be in excess of the total amount appropriated to such department for salaries and wages."

Upon the taking effect of this ordinance on January 1, 1928, the relator was informed he was no longer needed.

The ordinance created the position of "chef" and abolished the position of "steward." Thereupon, the Superintendent of the Workhouse appointed one John Oberdahn, a guard and overseer of supplies to the added duties of "chef."

The relator thereupon appealed to the Civil Service Commission for reinstatement, claiming the position of chef was the same as the former position of steward and the change was in name only, and that this was merely a subterfuge to oust the relator from his position.

It was sought at the trial to introduce evidence as to the duties of a chef and those of a steward. The court refused to receive this evidence. It is a matter of common knowledge that the duties of a steward and those of a chef are distinct and different.

A "chef" is defined by lexicographers as a male head cook.

A "steward" is defined as a person entrusted with the management of affairs not his own; one who manages or disburses for another or others; one in general charge overseeing the servants, etc.

It is, therefore, apparent that there is a wide distinction between the duties of a chef and those of a steward. Whether or not there was a limitation of one and expansion of the other to make them of equal performance is not before us. All that we have are the two terms presented by the ordinance, and, in the absence of any evidence as to the duties, we are compelled to use the usual and ordinary meaning of the words in relation to the duties involved.

We can not find, therefore, that the position is the same and the change is one of name only. The record supports the claim of the plaintiffs in error that the change was not a subterfuge. It is shown clearly in the evidence that it was the idea of economy on the part of the City Manager. The work of the guards is shown to have been very light. The duties of chef were likewise shown to be light. The City Manager thereupon, under authority of the ordinance, provided such officers and employees as were necessary for the conduct of the work of the department, and this was done without incurring salaries and wages in excess of the amount appropriated.

It is suggested that the position having been created by ordinance, it could only be abolished by ordinance. We refer to that portion of the ordinance above quoted, authorizing the City Manager or other executive head, to appoint such officers and employees as shall be necessary for the conduct of the work in the department, provided that the salaries and wages do not exceed the amount appropriated therefor. The City Manager, acting within the scope of

the ordinance, is the action of Council by ordinance.

Attention is called to another part of the ordinance, sub-section 4, which provides:

"This ordinance shall not be construed as changing any of the functions or conditions of employment of any person in the City Service or as abolishing any position at the present time occupied."

It is claimed this action of council protects the relator in his position.

The answer to this is, the ordinance does not make the change. The ordinance empowers the city manager to create the organization by way of officers and employees. Having organized the department by consolidating the position of chef and guard, in the interest of economy, the fact that it dispenses with the service of steward, does not do violence to the terms of the ordinance.

It is further in the evidence and undisputed that Council has made no appropriation for the position of steward of the Workhouse. This in effect would be equivalent to abolishing the position. In any event it makes the question political and economic, and involves no duty or responsibility on the part of the Civil Service Commission.

In the case of **Curtis, Safety Director v State, ex Morgan, 108 Oh St, 292,** Chief Justice Marshall observes in the opinion:

"or if the legislative branch fails or refuses to make sufficient appropriations, thereby making it impossible for the safety department to meet pay rolls, in such case the problem concerns only the public welfare, and is a political and economic one, and the Civil Service Commission has no duty or responsibility."

Sec 486-16 GC, under the Civil Service Act, provides:

"* * * and whenever any permanent office or position in the classified service is abolished or made unnecessary, the person holding such office or position shall be placed by the commission at the head of an appropriate eligible list, * * *."

In the case under consideration in effect the position was abolished or made unnecessary. The relator holding the position at the time was placed at the head of an eligible list, and while not pertinent to the decision in the case under consideration it may be stated that the relator was given a position in the unclassified service of the City as City Bailiff, and has ever since held such position.

In the case of Curtis, Safety Director v State ex Morgan, supra, in the opinion, the Chief Justice makes further pertinent observations. He states:

"The laws and rules pertaining to the Civil Service must be so construed as to harmonize their provisions with other state laws relating to the powers and duties of city councils and service and safety departments of cities in the creation and abolition of offices and places of employment and in the appointment and discharge of officers and employes. Proper recognition must be given to the principle that in our multiple form of government certain mutual checks and balances are provided, **while at the same time leaving to each department a well-defined independence in its proper sphere."**

Further, in the course of the opinion, it is stated:

"It is, of course, important to properly and impartially administer the Civil Service rules and requirements, and to recognize the powers and duties of the Commission in the exercise of its proper prerogatives, but it is no less important that the safety department of our municipalities be equally free and untrammeled in the exercise of its proper prerogatives.

"Whatever language may have been employed by the Legislature in the enactment of the civil service statutes, that language must be construed in the light of the underlying principles of the Civil Service Commission, as hereinbefore declared, and we cannot agree that the Legislature intended to empower the Commission to interfere with the administration of the city government in such a way that the working forces in the classified service could not be reduced in the interest of public economy and to prevent deficiencies in the public funds."

Many cases are cited in the opinion, and it seems that the rule applicable here may be summed up in the statement that the right to have an opportunity to make an application for reinstatement implies that the cause of removal was for some dereliction or neglect of duty, or incapacity to perform duties, or some delinquency affecting the employe's general character or his fitness for the office, and that the provision of the statutes has no application to a case where the incumbent was dismissed for want of funds, or in order to reduce expenses.

By way of summation—we are of opinion that the position of steward at the Cincinnati Workhouse, held by the relator, was

abolished by the ordinance of the City; that the creation of the position of chef was not a mere change in name; that the combining of the duties of chef and guard was in the interest of economy, and not a subterfuge; that as a result thereof, the relator is entitled to be, and was placed at the head of an eligible list. If there could be any question about this, it is admitted that there is no appropriation for the position by the City Council, and there is no power to compel the City Council to make such an appropriation.

Our conclusion is—that the Court of Common Pleas erred in granting the peremptory writ; that on the undisputed facts the judgment should have been in favor of the defendants. This court will therefore enter the judgment that the court below ought to have rendered.

The judgment of the Court of Common Pleas of Hamilton County is reversed, and judgment denying the writ, at the cost of the relator, will be entered here.

ROSS, PJ, and CUSHING, J, concur.