### STATE ex ALLEN v WAHL

Ohio Appeals, 2nd Dist, Franklin Co

No 2722.  Decided Jan 25, 1938

·Agnes B. Dickinson, Columbus, for relator.

Herbert S. Duffy, Attorney General, Columbus, and H. E. Rutledge, Asst. Atty. General, Columbus, for respondent.

## OPINION

### By THE COURT

The pleadings in this case are brief.

The relator in her amended petition says that on February 1, 1934, she was appointed as a janitress in the Ohio Department Building under civil service; that her work has always been or high order; that on June 9, 1936, she received a communication from the respondent stating in substance that "due to the necessity of curtailing expenses you are hereby notified that your position as janitress is abolished effective June 16th." Relator states that no economy was effected by her dismissal and that her position was not abolished but that another person was engaged to do her work. She prays for a writ of mandamus requiring respondent to restore her to her former position and for such other orders as may be just.

To this the respondent answers, admitting his official position and that the relator was appointed to a position as janitress on about February 1st, 1934, in the classified civil service of the state. He denies all other allegations.

### THE EVIDENCE

The evidence discloses that the relator was employed as a janitress in the state service under classified service as provided by the Code; that she received the letter as alleged in her petition in which she was informed that due to the necessity of curtailing expenses her position was abolished effective June 15, 1936. Her salary had been $1000.00 per year and her classification and duties as defined in the bulletin announcing examinations on October 27, 1933, for her position were, "unskilled labor service, common labor group, grade 3, salary $950.00 per annum. Duties, incumbents of these positions perform regular janitorial duties in the new State Department Building, cleaning, dusting and caring for the furniture and equipment in general; and performed such other duties as assigned. "

An official bulletin issued June 9, 1936, calling for examinations on July 2nd, described the duties in somewhat different terms as follows: "The incumbents of these positions, the duties of which require physical strength and good health, perform routine cleaning work in an assigned portion of the State Building or Department; clean, sweep, mop and scrub floors; dust furniture, remove waste baskets, replenish toilet supplies; remove soiled towels; scour wash-bowls and toilets and perform other janitorial duties as assigned."

The bulletin calling for the examination of July 2nd and defining the duties of a janitress, who are invited to take examination for that position does not directly bear upon this case except insofar as it shows that at a date subsequent to the discharge of the relator because her position was abolished, others were invited to take an examination for the same duties with a slightly different description thereof. It is asserted by the relator that other persons were hired to do her work at an increased pay and the testimony discloses that eight different individuals were hired at some increase in pay, some permanently and some temporarily, all of whom were men and all as part of their service performing duties as a janitor in the State Department Building. These were listed as laborers, janitors and other classifications.

The respondent asserts that the appropriation for the operation of the building for the year 1936 was $1300.00 less than the previous year, and that it thereby became the duty of the director to bring his operating expenses within the reduced appropriation with as little impairment to the service as possible; at the time of the discharge of the relator there were seven women employed as janitresses at $1000.00 per year, and it is claimed that by dispensing with their services a saving could be made of $7000.00 per year. It was claimed that the janitors could perform the duties theretofore performed by the women in service in addition to their own duties, while janitresses would not be capable of performing the heavier duties performed by the men. In order to work the economy required by the lessened appropriation the respondent therefore proceeded to abolish the position held by the women and added their duties to those of the janitors thereby, as claimed, affecting a saving of $7000.00 a year.

The respondent makes certain admissions as to the six men that were employed partly in janitorial service. She admits that one new janitor has been permanently appointed since the discharge of the relator, but that such employment was made to fill a vacancy caused by a resignation of one

who was employed prior to the relator's discharge. (When we may speak of the discharge of the relator, we refer to the abolishing of her position, and not to her discharge from a position which was continued). The relator complains that the only time additional janitors were employed was during the vacation periods and when that period was over she asserts that such employment was terminated. No women have been employed since the abolishing of the relator's position.

The respondent explains the employment of the six men who are claimed by the relator to have done janitorial work by asserting that one was employed prior to the time relator's employment ended; that one was hired as a 'laborer'; that one was hired as a janitor to replace a resigned janitor; that two were hired from July until November; and one from July until October; that three were employed temporarily during vacation period.

The respondent explains the increased payroll for janitors by the fact that the Legislature provided a salary of $1200.00 instead of $1000.00 that had theretofore been paid. As to another employee, it is asserted that his position was that of a watchman, but it is admitted that he did work as a janitor when not occupied with his regular duties. The respondent claims that the fact that laborers, nightwatchmen or garage attendants may have performed duties such as rightfully belonged to the janitorial classification when not busy with their regular duties, does not indicate that others were employed to do the service formerly performed by the relator, for which they were paid under another classification.

The respondent asserts that the decrease of $13000.00 in the appropriation made it necessary to reduce expenses, and the abolishment of the position of janitress was the logical means of effecting a part of the economy, and that no persons have in effect been appointed to fill the positions abolished, but that the work performed by the relator and others has been absorbed by other employes whose numbers have not been increased and that thereby a necessary economy has been effected. We think there is no doubt that if the position of the janitresses was abolished for the honest purpose of meeting the necessary economy imposed by the lessened appropriation that there would be no just complaint upon

the part of those so deprived of their position.

Sec 486-17a GC provides that the tenure of every employee in the classified service holding a position under the provision of the act shall be during good behavior and efficient service but that any such officer may be removed for incompetency, inefficiency and other disqualifications named in the statute. Where the employee is so removed he shall have time to file an explanation and may appeal from the order and have the cause of his dismissal investigated by proper authorities.

There is no claim in the present case of any inefficiency upon the part of the relator. Indeed it is admitted that she was performing satisfactory service.

Sec 486-16 GC provides that any person who has been separated from the service without delinquency may be reinstated within one year to a vacancy in the same or similar position, and that whenever any permanent position is abolished or made unnecessary the person holding such position shall be placed by the commission at the head of an appropriate eligible list.

Sec 486-17 GC prohibits reductions, layoffs and suspension by reason of any religious or political reasons or affiliations.

We may safely conclude that if the position in question was in reality abolished or made unnecessary, that the only advantage attaching to one who has so lost a position is that he takes his place at the head of an appropriate eligible list. It is claimed by the respondent that the relator in this case is now on this eligible list, and further that one of those who lost her position at the same time as the relator has since been appointed to a similar position at another place.

Sustaining our position that the abolition of a position to meet financial and economic requirements does not give to one so losing a position a right to re-employment, we refer to **Curtis v State, 108 Oh St 292; Vansuch, Dir. v State, 112 Oh St 688; Dykstra v State, 42 Oh Ap 141 (12 Abs 207).**

Another principle of law well recognized is that the abolition of a position to meet financial and economical requirements must not be predicated upon a mere subterfuge. If it appears that after such admitted abolition of a position, another is employed to do the identical service, either under the same title or classification or a different title, the discharged employe will be restored to his former position. This is the real ques-

tion that confronts us in the instant case, it being the claim of the plaintiff that the position of janitress was not really abolished but others were employed to perform the identical service as janitors or under different titles or designation. In support of this contention plaintiff presents evidence of certain individuals doing janitor work immediately after her discharge who were not in the employ of the State at the time of the attempted abolition of her position as janitress. It appears from the evidence that five or six women, occupying the position of janitress, received identical letters at the same time in which the statement was made that their position was abolished. It also appears that prior to the attempted abolition of the position of janitresses there existed as employees of the state six or seven janitresses and twenty-one or twenty-two janitors. It also appears that the appropriation made by the Legislature for the maintenance of the Ohio Office Building was reduced from the amount allowed in the previous years. It also appears that the salaries of janitors were increased from $1000.00 a year to $1200.00 a year. In addition to this evidence we find corroboration in the appropriation act of the 91st General Assembly for the years 1935-36. Under the provisions of §154-20, GC, it is provided that each employe in the several departments shall be entitled during each calendar year to fourteen days leave of absence with full pay. It is the claim of the State that the new employes doing janitor service immediately following the attempted abolition of the position of plaintiff and others were temporarily employees taking the place of regular employees on vacation. With this pronouncement of the established principles of the law we now look to the record to ascertain whether or not the attempted abolition of the position of janitresses was a mere subterfuge and if others were in fact taking the position of these women, whether under the name of janitors, common laborers or otherwise. In order to solve this question of fact we have taken up and charted each and every name of any individual who is mentioned as a possible new employee doing janitor service. The plaintiff and other women employees let out at the time were all called as witnesses with the exception of one or two. Each of these witnesses was inquired of as to whether or not she knew certain named individuals and whether or not they were working as janitors during the time of her employment, Very generally, each and

every one said they knew no such individuals, and that none of the named persons was working or doing janitor work at the State Office Building during the time of their employment period.

As supplementary to this testimony H. T. Fitzpatrick, an examiner in the auditor of state's office, was called as a witness, having with him the sheets from which vouchers were issued showing that these named individuals drew salaries following July 15, 1936, when the plaintiff and others were discharged and had not been in the employ of the state previous to that time. In some of the instances the vouchers disclosed that they were being paid for service as janitor. The plaintiff and her associates, as well as her counsel, would be warranted in a conclusion that these individuals were taking the positions vacated by them, and the claimed abolition of the office a mere subterfuge, unless attention was called to the fact that these employments were merely temporary to take the place of regular employees exercising their right of fourteen days leave of absence. However, if these new names were merely temporary employees doing the work of the regular employees holding their positions under civil service and away on their statutory right of fourteen days leave of absence, then there would be a failure of proof to support plaintiff's contention. We will now take up these names and ascertain the facts as disclosed from the evidence. The four prominently mentioned as doing janitor work exclusively and holding their positions following the discharge of the plaintiff and her associates, were the following: Roman M. Kemp, Francis E. Shea, John W. Murray and Charles L. Scott. The first three were, according to Mr. Fitzpatrick, listed for pay on what their office calls the supplemental list, which he says indicates temporary and not permanent employees. We think the evidence conclusively shows that all four of these men performed janitor work exclusively. Roman M. Kemp started his service on July 15th, 1936, and drew his last pay on November 15, 1936, and was not in the service after that date.

Francis E. Shea started his employment on July 15th, 1936, and drew his last pay October 15th, 1936, and is no longer in the service.

John W. Murray commenced his service on July 15, 1936, drew his last pay November 15th, 1936, and is no longer in the service.

Charles L. Scott started his employment

as a temporary employee on June 30, 1936, and afterwards was appointed permanently to take the position of Milton Briggs, who performed his last service for the State on the 15th day of June, 1936. Mr. Briggs was a civil service appointee and was a witness called by the plaintiff. Apparently he severed his connection by absenting himself and not reporting for work. The record is rather vague but indicates that he had some trouble following an automobile accident, and that this had something to do with his failure to report for work. Scott is now a civil service appointee permanently employed taking the place of this man Briggs.

Another name that is mentioned is that of Charles Toth. Apparently he entered on his employment June 15, 1936, and continued until December 15, 1936. Whether or not he is still in the employ is not disclosed. Toth, however, appears on the pay roll as a common laborer and so far as we are able to find no witness connects him as doing janitor work at any time.

Another name is that of Douglas Hunter. He appears on the pay roll as a laborer assisting in moving and does not appear to be a regular employee. Evidence was presented that during the summer of 1936 three commissions or departments, occupying offices in rented buildings, were moved into the State Office Building and thereby increased the regular population by 600. It also appears that an extra appropriation was made by the Legislature to take care of this moving expense. We find no mention of Hunter doing janitor work unless it would be in cleaning up following their work in moving these new departments.

The name of James Vaughn is also mentioned. Inquiry was made as to his pay roll voucher as to one day only and that was June 15th, 1936. It therefore necessarily appears that he was in the service before plaintiff and her associates were discharged. On page 67 of the record evidence was presented that he is no longer in the service. He was listed as a garage attendant. As to when his service was discontinued is not shown.

The name of Joe Rosenfeld also appears. Inquiry was made as to his pay voucher and the only thing presented is that he drew pay on June 15, 1936. He was listed as a laborer.

We also have the name of Charles Francisco listed on pay roll as watchman. As to his pay roll voucher nothing appears except that he drew pay on June 15, 1936.

Plaintiff presents evidence that during the time she was there that he did do work with the vacuum cleaner, which would be janitorial service. The record fails to disclose if still in service, or as to when his service was discontinued.

There also appears the name of Frank Wills and the pay roll voucher shows that on June 15, 1936, he drew pay as laborer at 50c an hour. No showing is made that he was continued in the service. The only other name mentioned is that of Lloyd Wills. but apparently Frank Wills was intended.

Taking the record as a whole, and after a very careful analysis, we are unable to conclude that plaintiff has maintained the burden of proof as required. Mandamus is an extraordinary remedy only to be allowed when the right is clear. It seems to us in the instant case that there is an absolute failure of proof. Prayer for the writ will be denied.

Entry may be drawn accordingly.

BARNES, PJ, and HORNBECK, J, concur.
GEIGER, J, dissents.